# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

JOHNNY L. INGLE,

    Plaintiff,

v.

SHELBY COUNTY, et al.,

    Defendants.

No. 2:19-cv-02080-TLP-tmp

JURY DEMAND

## ORDER PARTIALLY DISMISSING AMENDED COMPLAINT, DIRECTING THE CLERK TO ISSUE PROCESS AND TO SERVE THE REMAINING DEFENDANTS, AND DENYING REQUEST FOR APPOINTMENT OF COUNSEL

This Court dismissed Plaintiff Johnny L. Ingle's pro se complaint under 42 U.S.C. § 1983 and granted him to leave to amend. (ECF No. 7.) Plaintiff timely amended his complaint (ECF No. 8) now in the screening process. Plaintiff does not list the parties he wishes to sue by name in the style of the case. But his amended complaint contains allegations that he seeks to sue the following: the Director of the Shelby County Correctional Center ("SCCC"), District Attorney General Amy Weirich, Shelby County Mayor Lee Harris, Shelby County Sheriff Floyd Bonner, Jr., Shelby County Chief Jailer Kirk Fields, Jailer First Name Unknown ("FNU") Hurtado,[1] Jailer FNU Bass, Jailer FNU Pree, Sergeant FNU Panell, Jailer Big Will, Jailer FNU Hadley, and Jailer FNU Chaney. The Court DIRECTS the Clerk to list the Defendants accordingly. Plaintiff seeks to sue the Defendants in their individual and official capacities.

---

[1] Ingle had spelled this Defendant's name "Hertado." (ECF No. 1 at PageID 6.)

## BACKGROUND

Plaintiff provides far greater detail to his allegations than he did in his initial complaint. He first alleges a new claim, not included in his initial complaint: that on June 6, 2018, he petitioned for a writ of habeas corpus in the Shelby County Criminal Court. (ECF No. 8 at PageID 55.) The next month, the authorities transferred him to a hospital and placed him in a holding cell even though, he claims, he had no medical reason to be there. (*Id.*) He does not allege, however, who sent him to the hospital. (*Id.*)

Plaintiff later learned that the trial court held a hearing on his habeas petition while he was at the hospital. (*Id.* at PageID 56.) He claims that officials intentionally held him at the hospital to prevent him from pursuing his habeas petition. (*Id.*) Plaintiff seeks to sue the director of the SCCC and District Attorney General Weirich, alleging they conspired to deny him access to the court. (*Id.*) The rest of his amended complaint amplifies claims he made in the original complaint.

Plaintiff reiterates his original claims about the conditions at the Shelby County Jail ("Jail") after his transfer from the SCCC. (ECF No. 8 at PageID 57–58; *see* ECF No. 7 at PageID 45.) He again seeks to sue Shelby County Mayor (Lee) Harris, Sheriff (Floyd) Bonner, and Chief Fields for his treatment and the conditions. (ECF No. 8 at 58–59.) He asserts that each Defendant knew the Jail was overcrowded but "ignored his obligation" under the Tennessee Constitution "to inspect and provide a safe comfortable Jail." (*Id.*)

Plaintiff also reiterates his allegations that Jailer Hurtado refused to move him to another cell, despite his cellmate's threats and loud, racist comments. (ECF No. 8 at PageID 60; *see* ECF No. 7 at PageID 45.) The cellmate eventually punched Plaintiff, who then had to wait for Hurtado to remove the cellmate before taking Plaintiff to a nurse. (ECF No. 8 at PageID 60.)

Plaintiff alleges anew that Hurtado failed to protect Plaintiff because he knew the cellmate had made racist threats against staff members, yet Hurtado refused to honor Plaintiff's request for placement in another cell. (*Id.* at PageID 60–61.) Plaintiff also asserts that Chief Fields failed to train Hurtado to protect Plaintiff, and that Sheriff Bonner failed to ensure that Fields had properly trained Hurtado. (*Id.*)

Plaintiff alleges that the authorities made him serve fifteen days in segregation for the incident with his cellmate. (*Id.* at PageID 62.) He alleges that, during those fifteen days, they only allowed him to leave his cell twice for an hour each time. (*Id.*) One time, Jailer Bass told him not to tell other detainees. (*Id.*) And on the second occasion Jailer Bass placed Plaintiff in a "holding cage" no bigger than his cell. (*Id.*) Plaintiff allegedly asked Jailer Pree for more time out of the segregation cell. (*Id.*) But Pree allegedly refused his request. (*Id.*) Plaintiff claims that Jailers Bass and Pree knew he was entitled to one-hour out per day but wrongly denied him that time out of his cell. (*Id.* at PageID 62–63.) Plaintiff also seeks to hold Chief Fields and Sheriff Bonner responsible for denying him time out of his cell. (*Id.* at PageID 63.)

Plaintiff next alleges that, when Sergeant Panell escorted him to segregation to serve his fifteen days, she told him what legal materials he could bring. (*Id.* at PageID 63.) But she was wrong. (*Id.*) Panell allowed Plaintiff to take only two folders of materials, even though Jail policy allows a shoebox-sized box per inmate. (*Id.* at PageID 63–64.) In segregation, a jailer Plaintiff refers to only as "Big Will" took one of his folders. (*Id.* at PageID 64.) Plaintiff alleges that the officers never returned these materials to him. (*Id.*) Plaintiff asserts that Panell and Big Will violated Jail policy when they confiscated his property. (*Id.* at PageID 64–65.) He also seeks to hold Chief Fields responsible for not ensuring that the jailers followed the Jail's policies. (*Id.* at PageID 65.)

3

Plaintiff alleges that included in his lost property was a copy of the first petition for a writ of habeas corpus he filed in the Shelby County Criminal Court. (*Id.*) But because Big Will and Panell took his property, he could not include a copy of that petition with his second petition as state law requires. (*Id.*) Plaintiff does not allege that his second petition was denied or refused on that basis but alleges that he was "denied a fair opportunity to present all of [his] issues." (*Id.* at PageID 66.) He seeks to hold Big Will and Panell responsible. (*Id.*) And he asserts that Mayor Harris, Sheriff Bonner, and Chief Fields "failed to investigate the Jail to ensure of [sic] Ingles United States constitutional rights." (*Id.*)

Finally, Plaintiff alleges an array of one-time incidents—an unnamed jailer took his shoes once even though jailers allowed all African American detainees to keep theirs;[2] Jailer Hadley did not give him a spork; Jailer Chaney refused to retrieve his property even though he had returned another detainee's property; Jailer Chaney made a racist comment; an unnamed jailer took his legal papers; an inmate stole his laundry; other inmates gave him their soiled laundry; officers forced him to wear torn clothes; and unnamed jailers are racially discriminating against him. (*Id.* at PageID 67.)

Given these allegations, Plaintiff requests damages and an order "requiring all Jailers to remain on their post during shift changes until properly relieved." (*Id.* at PageID 57, 59, 61, 63, 65, 66.)

## **LEGAL STANDARDS**

The Court announced the legal standards for evaluating claims in an inmate's complaint in the prior order of dismissal (ECF No. 7 at PageID 46–48) and will not reiterate them here.

---

[2] Plaintiff does not provide his race in his Complaint. (*See* ECF No. 8.)

## ANALYSIS

I. **Plaintiff's Amended Complaint Fails to State a Claim Against Any Defendant in His or Her Official Capacity**

   A. **Shelby County**

Plaintiff again seeks to sue the Defendants in their official capacities. Plaintiff alleges that each Defendant except District Attorney General Weirich is an employee of Shelby County. As noted in the Court's previous order, those claims are construed as against Shelby County. (ECF No. 7 at PageID 48.) For the same reasons discussed before, Plaintiff fails to state a claim against any Shelby County Defendant in his or her official capacity. (*Id.* at PageID 48–49.) The Court therefore DISMISSES his claims against these Defendants in their official capacities.

   B. **State of Tennessee**

Plaintiff also seeks damages against District Attorney General Weirich in her official capacity. As a District Attorney General, Defendant Weirich is an employee of the State of Tennessee, not Shelby County. *See White v. Swafford v. Gerbitz*, 860 F.2d 661, 663 n.2 (6th Cir. 1988) (noting that district attorneys general and their assistants "prosecute suits on behalf of the state, Tenn. Code Ann. § 8-7-103, and receive an annual salary payable out of the state treasury, Tenn. Code Ann. §§ 8-7-105 and 8-7-201" and are thus employees of the State of Tennessee); *see also Hembree v. Office of the Dist. Attorney Gen. for the 13th Judicial Dist. of Tenn.*, No. 2:18-cv-00097, 2019 WL 1437913, at *2 (M.D. Tenn. Apr. 1, 2019). Claims against her in her official capacity are therefore construed as against the State of Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

But Plaintiff does not state a valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution says that "[t]he Judicial power of the United States

shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Courts have interpreted the Eleventh Amendment to prohibit citizens from suing their own states in federal court unless the state first waives its sovereign immunity. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)).

Tennessee has not waived its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person under 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

So the Court DISMISSES Plaintiff's claims against District Attorney General Weirich in her official capacity.

II.     **Plaintiff's Amended Complaint Sufficiently States a Claim Against Jailers Hurtado, Bass, and Pree in Their Individual Capacities**

Plaintiff realleges several claims from his original complaint. He also asserts one new issue not alleged before. The Court reviews the claims in the order Plaintiff presented them.

    A.      **Access to Courts**

Plaintiff for the first time alleges that state or county officials denied him his right to access the courts when they transferred him to the hospital the same day he was to attend a state

court hearing on his habeas petition. Because he was not at the hearing, Plaintiff alleges, the trial court dismissed his petition. Although his allegations are unclear, the Court construes Plaintiff's amended complaint to allege that the Director of the SCCC and District Attorney General Weirich conspired to "divert" him to the hospital instead of to the state court for his scheduled hearing. This challenges his right to access the courts.

Prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). To have standing to pursue this claim, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394. But there is a time limit in bringing these claims.

This claim is untimely. The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985). The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision in Tenn. Code Ann. § 28-3-104(a)(1). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). And it runs from the day he "knew or should have known of the injury which forms the basis of [his] claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). According to Plaintiff's amended complaint, the trial court dismissed his habeas petition on July 30, 2018. That is when he knew or should have known of the claim.

But Plaintiff did not raise this claim in his initial complaint. He raised it for the first time when he filed the amended complaint, September 30, 2019. *See* Fed. R. Civ. P. 15(c). For this claim, the accrual date was when the state court denied his habeas corpus petition, July 30, 2018. His claim is thus two months too late and must be DISMISSED.

B.   **Conspiracy**

Plaintiff asserts that District Attorney General Weirich and the Director of the SCCC conspired to deny his right to access the courts. A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). The pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Plaintiff does not provide any factual specifics of the alleged conspiracy. He merely alleges, with no factual elaboration, that Weirich "knowingly and with deliberate intent" conspired with the Director of the SCCC. The Court need not accept this conclusory allegation. *See Iqbal*, 556 U.S. at 679. And because Plaintiff alleges nothing more to support his claim, he does not state a claim of conspiracy. This claim must also be DISMISSED.

C.   **Fourteenth Amendment**

Plaintiff argues that Mayor Harris, Sheriff Bonner, and Chief Fields are responsible for the uncomfortable conditions he experienced during three days at the Shelby County Jail. Because Plaintiff was a pretrial detainee at the time of the alleged events, his claim arises under the Fourteenth Amendment. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)).

8

As a pretrial detainee, Plaintiff is entitled to the same protection against cruel and unusual punishment as convicted inmates. *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The Sixth Circuit "has historically analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Id.* (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).[3] Thus, to state a claim under the Fourteenth Amendment, Plaintiff must satisfy both an objective and a subjective component. *Id.* at 937–38.

The objective component requires that the deprivation be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Courts consider the conditions of a prisoner's confinement cruel and unusual if they deprive inmates of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A prisoner must allege "extreme deprivations . . . to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).

To satisfy the subjective component, "the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind." *Winkler*, 893 F.3d at 891 (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)). The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm.

---

[3] Some circuits have modified the standard a pretrial detainee must meet to state a claim under the Fourteenth Amendment after the Supreme Court's holding in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). *See Badger v. Chapman*, No. 16-2886-STA-egb, 2018 WL 5777504, at *6 (W.D. Tenn. Nov. 2, 2018) (discussing cases). For screening purposes, the Court will apply the Eighth Amendment's deliberate indifference standard to Plaintiff's Fourteenth Amendment conditions-of-confinement claim. *See id.*

9

*Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). A defendant has a culpable enough state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. 837.

Plaintiff here alleges that the conditions he faced for three days at the Jail were uncomfortable, but "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349; *see also Grissom v. Davis*, 55 F. App'x 756, 757–58 (6th Cir. 2003) (affirming district court's dismissal of claim that seven-day deprivation of a mattress and bedding violated Eighth Amendment). Plaintiff does not allege that Defendants deprived him of a human need, such as clothing, food, or shelter. *See Wilson*, 501 U.S. at 304–05. Plaintiff alleges only that what the jailers gave him was undesirable. His allegations of unappetizing food, cold, and rude jailers do not rise to the level of "extreme deprivations" required to violate the Constitution. This Court finds that this claim should be dismissed also.

### D. Failure to Protect—Jailer Hurtado, Chief Fields, and Sheriff Bonner

The Court addressed Plaintiff's allegations against Jailer Hurtado in the previous order of dismissal. (ECF No. 7 at PageID 49–50.) As noted, Plaintiff does not have a right to a particular housing assignment. (*Id.* (citing *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008).)

But Plaintiff newly alleges that Hurtado knew Plaintiff's cellmate had made threats towards Plaintiff and still failed to protect Plaintiff from the attack by the cellmate. (ECF No. 8 at PageID 60.) The Court reviews this claim under the Fourteenth Amendment using the standards discussed above. *See Farmer*, 511 U.S. at 832–33 (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners" (quotations omitted)); *Richko v. Wayne Cnty., Mich.*,

819 F.3d 907, 915 (6th Cir. 2016) (explaining that the Fourteenth Amendment's Due Process Clause protects pretrial detainees from cruel and unusual punishment).

To make a viable claim, Plaintiff therefore must allege facts showing that Hurtado was "deliberately indifferent to a substantial risk of serious harm to [Plaintiff] and that [he] disregarded that risk by failing to take reasonable measures to protect him." *Richko*, 819 F.3d at 915 (citing *Farmer*, 511 U.S. at 842). In the context of a failure-to-protect claim, courts will not hold a prison officer liable without a showing that they "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003).

Plaintiff alleges that Hurtado knew that the cellmate had threatened Plaintiff and made racial slurs towards staff members. Plaintiff had also informed Hurtado that the cellmate had threatened him, which is why he allegedly requested to move to another cell and feared for his safety. Yet Hurtado, according to Plaintiff, ignored his request. When the cellmate eventually attacked Plaintiff, Hurtado was not at his assigned station and could not immediately respond to Plaintiff's calls for help. These claims allege both a substantial risk of serious harm to Plaintiff and that Hurtado was aware of, but disregarded, that risk. *See Williams v. McLemore*, 247 F. App'x 1, 2007 WL 1748146, *9 (6th Cir. 2007) ("In the abstract, one prison inmate's threat to the health and safety of another inmate is 'sufficiently serious' to satisfy [the objective] requirement."). Plaintiff therefore states a Fourteenth Amendment claim against Jailer Hurtado.

Plaintiff also claims Chief Fields is liable for failing to train Hurtado properly. And that Sheriff Bonner is responsible for failing to ensure that Chief Fields properly trained Hurtado. But under § 1983, courts will hold government officials responsible only for their own actions and may not "be held liable for the unconstitutional conduct of their subordinates under a theory

of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). A supervisor may be responsible for the unconstitutional acts of a subordinate only if Plaintiff can show that the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy*, 729 F.2d at 421 (citation omitted).

To assert this claim, at a minimum, Plaintiff must allege that Fields or Bonner "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates." *Id.*; *see Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (explaining that, for liability to attach, "the supervisors must have actively engaged in unconstitutional behavior"). But Plaintiff does not allege that either Fields or Bonner was aware of Hurtado's indifference to the threats Plaintiff received and that they ever encouraged or participated in that conduct. Nor does he allege that Hurtado had a history of ignoring inmate concerns and that Fields and Bonner should have been aware of that history. *See Harvey v. Campbell County, Tenn.*, 453 F. App'x 557, 562–63 (6th Cir. 2011).

Plaintiff alleges no facts suggesting there was a deficiency in training for which this Court should hold Fields or Bonner liable. Plaintiff thus does not state a failure-to-train claim against Fields or Bonner. *See Iqbal*, 556 U.S. at 679; *Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) (dismissing failure-to-train claims because Plaintiff pleaded only conclusory allegations).

### E. Cell Confinement—Jailers Bass and Pree

Plaintiff next alleges that, during his fifteen days in segregation, the officers only allowed him out of his cell twice, for one hour each. He alleges that on one of those occasions, Jailer Bass "diverted" him to a small "holding cage" no bigger than his actual cell, and on another occasion, Jailer Pree refused Plaintiff's request for mre time out of the segregation cell.

That officials confined Plaintiff to his cell for twenty-three hours a day does not violate the Constitution. *See Groomes v. Parker*, No. 08-2028-AN/P, 2008 WL 4057763, at *8 (W.D. Tenn. Aug. 26, 2008) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir.2003), and *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999)) (concluding the same for Eighth Amendment claim). But "a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees." *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983).

Plaintiff alleges that he received only two hours outside his cell over fifteen days, but he was being held in administrative segregation because of being attacked by his cellmate. It is thus possible there was a penological justification for confining Plaintiff in his cell for all twenty-four hours of most days. Taking Plaintiff's allegations as true, however, he sufficiently states a Fourteenth Amendment violation for being confined in his cell with no outdoor or recreational access for most of his fifteen days in segregation. The Court will allow these claims to proceed against Jailers Bass and Pree.

Plaintiff also seeks to hold Chief Fields and Sheriff Bonner responsible for his confinement. But as with Plaintiff's claim against Jailer Hurtado, he fails to allege facts to suggest that either Fields or Bonner knew of and encouraged in any way the actions of their subordinates. So these claims against Fields and Bonner will not survive.

### F.     Confiscation of Property

The Court addressed before Plaintiff's claims about confiscated property. (ECF No. 7 at PageID 50.) If he seeks to allege a claim that Sergeant Panell and Jailer Big Will violated Jail policy when they confiscated his property, he does not state a claim. Section 1983 provides causes of action only for *federal* law violations, not for violations of state laws or prison

13

regulations or policies. *See Laney v. Farley*, 501 F.3d 577, 580 & n.2 (6th Cir. 2007) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)); *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate.") The Court DISMISSES this claim too.

### G. Loss of Legal Claim

Plaintiff alleges that, because his legal documents were confiscated, he could not present "all of [his] issues" in his state petition for a writ of habeas corpus, which challenged the adequacy of his preliminary hearing. (ECF No. 1 at PageID 66.) Plaintiff does not explain the issues that he was allegedly unable to include in his petition.

As noted above, Plaintiff has a right to file a habeas corpus application in the state courts. *See Thaddeus-X*, 175 F.3d at 391. He exercised that right and applied for habeas relief but the state courts ruled against him. Now he claims under § 1983 that the Jailers interfered with his ability to argue his case— they allegedly denied him access to the courts—by taking his legal papers.

To state a claim here that the jailers interfered with his right to access the court, Plaintiff must "show that the defendants have scuttled his pursuit of a 'nonfrivolous, arguable' claim." *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Put differently, he must show that, if Jailers Panell and Big Will had not confiscated his legal documents, the result of his habeas corpus application would have been different. *See id.* at 882.

14

In his habeas corpus application to state court, Plaintiff challenged the validity of his confinement. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). For that reason, this claim under § 1983 that the outcome of his habeas corpus application would have been different had the Jailers not taken his materials so he could have raised more issues necessarily brings into question the validity of his confinement. *See Sampson*, 917 F.3d at 882. This is a problem for Plaintiff.

The Supreme Court has held that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *see Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Heck v. Humphrey*, 512 U.S. 477, 486 (1994).

Success on the merits of Plaintiff's suit here would in turn show the invalidity of his confinement. He alleges that the jailers hindered him from successfully challenging his confinement by preventing him from raising certain issues. If the Court were to find in Plaintiff's favor on this claim, his conviction would be questioned. And because his conviction has not been invalidated, his claims are therefore premature, and Plaintiff is barred from raising that claim in this § 1983 action. *See Sampson*, 917 F.3d at 882 (citing *Heck* and decisions from other courts.

### H. Failure to Investigate

Plaintiff does not state a claim that officials failed to investigate the alleged deprivations of his rights. Although Plaintiff has a First Amendment right to file a grievance against prison officials, he has no similar right to an investigation of his allegations. *See Carlton v. Jondreau*,

76 F. App'x 642, 644 (6th Cir. 2003) (affirming that inmate did not state a claim that deputy warden "had failed to properly investigate his grievance"); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (affirming denial of inmate's claim that prison officials failed properly to investigate his grievances because there is no "federally protected liberty interest" in a certain resolution or investigation of grievances).

Nor does he have a constitutional right to a general investigation. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)) ("There is no statutory or common law right, much less a constitutional right, to an investigation."). So Plaintiff fails to state a claim on this point.

**I.      Miscellaneous Claims**

Finally, Plaintiff's string of complaints about the conditions in his prison, while undesirable, do not state any claims for relief. *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment.") He does not name any person responsible for discriminating against him, but directs his allegations at unnamed jailers. These general allegations cannot state a claim against any individual Defendant. *See Twombly*, 550 U.S. at 570 (holding that a complaint that fails to allege any action by a Defendant necessarily fails to "state a claim for relief that is plausible on its face"). As noted in the previous order, he does not state a claim about Jailer Chaney's alleged racist remark. (ECF No. 7 at PageID 50–51 (citing *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004).) And Plaintiff may not use § 1983 to sue private parties, which includes other inmates. *See Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999).

## CONCLUSION

In conclusion, the Court DISMISSES Plaintiff's claims against the Director of the SCCC, District Attorney General Weirich, Mayor Harris, Sheriff Bonner, Chief Fields, Sergeant Panell, Jailer Big Will, Jailer Hadley, and Jailer Chaney for failure to state a claim on which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). The Court will allow Plaintiff's claims against Jailers Hurtado, Bass, and Pree to proceed.

The Court ORDERS the Clerk to issue process for Defendants Hurtado, Bass, and Pree and deliver that process to the U.S. Marshal for service. Service will be made on Defendants Hurtado, Bass, and Pree under Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service will by advanced by the United States.

The Court also ORDERS that Plaintiff will serve a copy of every future document he files here on the attorneys for Defendants Hurtado, Bass, and Pree or on Defendants Hurtado, Bass, and Pree personally if they are unrepresented. Plaintiff must make a certificate of service on every document he files. The Court also directs Plaintiff to familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[4]

The Court reminds Plaintiff that he must promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may lead to the dismissal of this case without further notice.

---

[4] Plaintiff may obtain a copy of the Local Rules from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

Plaintiff again requests appointment of counsel. (ECF No. 8 at PageID 54.) Although 28 U.S.C. § 1915(e)(1) says the "court may request an attorney to represent any person unable to afford counsel," a district court has broad discretion in determining whether to appoint counsel for an indigent civil litigant. *See Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). Appointment of counsel in a civil case is not a constitutional right, and courts rarely appoint counsel in a civil case absent a showing of "exceptional circumstances." *Id.* at 605–06; *see also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("The key [to determining whether exceptional circumstances exist] is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help.").

Plaintiff asserts that this Court should appoint counsel because he "do[es] not know how to correctly apply my const. rights to my claims." (ECF No. 8 at PageID 54.) That assertion does not show exceptional circumstances warranting the appointment of counsel. The Court therefore DENIES Plaintiff's request for counsel without prejudice to refiling, if necessary, at a later, appropriate time.

**SO ORDERED,** this 1st day of November 2019.

s/ Thomas L. Parker<br>
THOMAS L. PARKER<br>
UNITED STATES DISTRICT JUDGE